The next case that I'll call up for argument is Houghton v. AH Capital Management You've got a busy morning. I know. It's been tricky. May it please the Court, Samir Dagestan on behalf of defendants, I'd like to reserve two minutes of time for rebuttal. I'd like to devote the majority of my time here, I think, to the waiver issue, but just to note that all of the things we've been talking about in the Solana case I think are equally applicable here. This Court held in Brennan that incorporation of the AAA rules, which are the relevant rules here, constitute clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability. You have a similar incorporation of rules. You have a similarly broad delegation clause that the parties agree that any dispute claim disagreement arising out of or relating in any way to your access or use of condominiums We've got multiple cases this week dealing with delegation clause issues. We're familiar with the legal arguments with regards to that. But I think in this case what really jumps out is the fact that it's 20 months of pretty extensive litigation, which the district court said required plaintiffs to engage in multiple meet-and-confers, court appearances, responses in support of or in opposition to defendants filing. So I suppose if it's 20 months where a good portion was stayed and there's nothing going on, that might present a different record. But there was quite a bit of litigation in this case. The district court said waiver. What do we do with that? Right. So I think the important question here is when was it that we knew that we had a right to arbitrate? So all that 20-month stuff ultimately goes to the second prong, which is did we act inconsistent with a known right? But when did we know the right? And this is a very unique and I think very narrow circumstance because we're a third party. We were not in possession of the arbitration agreement. And I think the critical thing is we had no knowledge of any of the circumstances that surrounded the signing of this arbitration agreement. I just want to, two things I think really underscore how little we know. At the time that I think the district court, under the district court's rule, said this is when you have to try and bring a motion to compel. You know you have a right to arbitrate. Is that a factual finding that we review for clear error? No. The only factual finding, I think, the most that could be said for the factual finding is this is on 1 ER 6 and 7. The more recent confirmation discovery does not negate the partner defendant's prior knowledge that Coinbase required users to agree to arbitration through its user agreement. So I think what the district court was saying is, well, what you knew is that Coinbase had a user agreement. But that doesn't mean that we knew we had a right to arbitrate. All right. So as to knowledge, the district court said at ER 6 that more recent confirmation in discovery does not negate the partner defendant's prior knowledge that Coinbase required users to agree to arbitration through its user agreement as admitted in its motion and known at least to defendants Leschner and Hayes. Exactly. That's the provision I just read out. And so that's the part of the district court opinion. So what the district court is saying there is not that you had a knowledge of your right to arbitrate, but you had a knowledge that Coinbase required users to agree to arbitration through its user agreement. But just to give you two examples of how this Why isn't that enough? Because that is plainly not enough for us to be able to go into court and file a motion to compel. And I'll give you two reasons. But you did. Basically, I mean, you used the same agreement. Well, no. What we got is the admission to ER 90 that they accepted, consented to, and agreed to the updated Coinbase user agreement. And that's a critical aspect of that. They agreed to it, and it is updated. So one important fact here is that The admissions were recently sought. But I don't know that you could really date knowledge from that point on, because what the district court said was you could have sought limited discovery to verify what's in the user agreement. You knew of the user agreement. You could have sought limited discovery to do that. But instead, you chose to pursue litigation, which then caused the plaintiffs to, as I alluded to earlier, respond to all of the intensive litigation that went on for 20 months. Well, I think that the crux of the district court's holding is basically that we had an obligation to engage in early discovery, and that failing to engage in early discovery constitutes knowledge. And there's no case that says that. You know, that's a very, that's a, that's a kind of a very radical, unprecedented idea. Well, it may not constitute knowledge, but maybe it constitutes waiver, I guess. That's what the district court seems to be saying, that you could have asked the district court, you could have flagged this and said, listen, we need some early discovery. We think there may be an arbitration clause. Right. But that can't be right, because the waiver test has two prongs. You have to have knowledge of your right, and then you secondly, you know, after that, have to act inconsistently with that known right. But the threshold trigger is that you know the right. And I think all we're saying is that you don't know the right in a situation where you have no plaintiff-specific evidence whatsoever. And so, two important points I just want to make. One is that the Coinbase user agreement substantially changed in January 2022, and it significantly broadened the scope. And we're really not sure we would have had any right to arbitrate or bring a record of estoppel claim under the earlier version of that. And they allege purchases from December 2021 to November 2022. And we really, you know, we basically didn't know which, you know, it might have been the case that Coinbase said, when you sign up, that's when you have to sign, you know, agree to the arbitration agreement. So it could have been in December, they signed up and were using the old version. But if there's reason to believe there might be arbitration, do you think your clients had any obligation to either flag this for the district court or to seek some additional discovery just to preclude this later finding of waiver? No, I don't think so. Because, you know, the federal rules sequence, this is basically, we had a suspicion. I don't think that that is, that's obviously true. We suspect that it might be true. We know that that's, you know, Coinbase, you know, often requires this, but we didn't know which arbitration agreement and we didn't know the conditions of assent. And there is, I am curious what plaintiffs will say about this, but there is absolutely no way we could have gone into court on that basis and said, listen, we don't know which arbitration agreement they signed. We don't know how they assented to it. We don't know whether it was on a mobile or a desktop site, you know, any of this stuff. That's why the court said you should have sought limited discovery, right?  So under your theory then, even if a party knows that there's a high likelihood that there's an arbitration issue, they could willfully bury their heads in the sand, utilize the federal forum, litigate that, receive adverse rulings, and then come in and say, oh, now we want limited discovery to verify whether there's an arbitration agreement and then invoke that? What's the principle there? I think this is a very unique situation that turns on the fact that we're a third party. In 99 percent of cases, a first party has knowledge of the arbitration agreement because they have the arbitration agreement. And courts always say, you know, you can't just say, oh, we didn't find it. You know, you have constructive knowledge of the arbitration agreement in your possession. But this is an arbitration agreement we had no knowledge of. We didn't know which one they signed. We didn't know anything about the circumstances. Sorry, Your Honor. There was an arbitration agreement contained. According to the motion to compel, you say that, indeed, the user agreement has contained an arbitration agreement for over a decade. But different versions of the arbitration agreement. Yeah, but that's not what you said. Basically, I mean, the district court said, look, that shows you have at least constructive knowledge. But we said you did not have constructive knowledge of the right to arbitrate. Because you didn't know the precise language, even though you knew that there was an arbitration agreement, that that excuses waiver. Oh, our right to arbitrate turns on the precise language. And the language that was added was the exact phrase, you know, that the right to arbitrate extends to, quote, products sold or distributed through Coinbase, which was us. So knowing the precise language, you know, is whether we know we have a right to arbitrate. And if we had gone into court on the basis of not even knowing what the provision, you know, what the context was or what the arbitration agreement was, we would have absolutely lost. And I think the language from the Solano opinion on this issue is very helpful. And there, you know, the defendants did try to go into court on the basis of this kind of speculation. And the court said there is no evidence as to whether Young accessed the Exodus platform through a mobile download, desktop download, or summer method, nor is there any evidence of when he downloaded the Exodus software, which he could have downloaded significantly earlier than the transactions at issue. So those are all things that would have been true for us, and we would have lost. So basically what the district court is saying is you have to go ahead with this, you know, this speculation without evidence, and then you'll lose your right to arbitrate. But if you wait too long, you lose your right to arbitrate, too. And the fact that it's late in the case is just a function of when discovery occurs in securities cases. Discovery doesn't occur in a securities case because discovery under Congress's mandate is stayed under the PSLRA. And we would have had to go to the court and say there's only two acceptances to that, whether you need it for preservation of evidence or prejudice to you. And we wouldn't have been able to meet the standard for lifting discovery under the PSLRA. Are there any cases that consider this waiver issue in the context of a non-signatory that's seeking to invoke the arbitration clause? That's part of what creates the complexity here, I think, is that feature. No, but there are cases where a party discovers their right in the Fifth Circuit case that we cite, the TriStar case, the Williams v. Cigna case, where these are Fifth Circuit cases where the court said, yeah, the party had a suspicion that there was an arbitration clause, but they didn't discover the arbitration clause until sometime through discovery. And it's when they discover the arbitration clause that they have knowledge of their right to arbitrate. And here we had a suspicion, but we had no basis to go into court on that suspicion. We did what the ordinary thing you do in all civil litigation when you have a suspicion. You say, well, can we move on it now? No, we need more information. When can we get more information? We get more information in discovery. And in the first set of RFAs that we filed, we asked this exact question, and we got our response, and then we promptly moved. And what the district court is saying is that you have to seek new mechanisms, have to relieve yourself of bars on discovery, seek early discovery. And if you don't do that, you've then waived your right, that that constitutes actual knowledge of your right to arbitrate. And I just don't think that follows from the waiver precedents. You're out of time, but I'll put a couple of minutes back for rebuttal. Thank you so much, Your Honor. Good morning. Good morning, Your Honors, and may it please the Court. Jamie Crooks on behalf of plaintiffs in the proposed class. I want to start where the Court left off with waiver. In ruling for the plaintiffs on every issue before him, including waiver, Judge Oreck faithfully applied this Court's precedent, took cognizance of the record before him, made a factual finding that defendants knew from the moment we filed our complaint that we purchased on Coinbase, knew before the complaint that Coinbase had an arbitration clause, which, by the way, has not changed in material respect in 2022. This is the first we're hearing of this argument. The relevant provision, the delegation clause, the definition of dispute has always said you and Coinbase agree to decide disputes in front of an arbitrator. That has not changed in any relevant respect since before or after this litigation was filed. Judge Oreck recognized that the plaintiffs, two of them, have signed this arbitration agreement themselves. They knew everything they needed to know to move. Is that right, though? I mean, I could see the argument that they knew everything they needed to do something, right, to maybe inquire further, tell the Court about this, or file some kind of motion for early discovery, but how about to actually move? I don't see how they could have filed a motion based on what they knew. So two responses to that, Judge Brest. So at the very least, they knew enough to have an obligation, like you suggested, to ask more questions. Wait, I mean, there's a question as to whether they should have that obligation. We can get to that in a second, but... I think in a situation like this, and the Court has, this Court has been clear, particularly in Hill v. Xerox, that waiver is a holistic question that you look at the totality of the circumstances, because the district judge knows what's going on and knows what they've seen and knows what they've done in litigation while they were sitting on their hands. And here, at the very least, if you have the suspicion, let's assume, which there's no evidence of this, let's assume that they did not know and did not, were not able to move. They certainly should have moved for discovery before they filed a motion to dismiss, totally negating the PSLRA litigation bar. After they filed their motion to dismiss, they surely could have moved for an exception from the discovery bar. As Judge Chabria noted in ruling on the same question in a case that we submitted a 28-J letter, it's not a serious argument that the PSLRA discovery bar, which was created to benefit defendants, prevented these defendants from seeking discovery if they really did not know. But they did know. And there's nothing in the record suggesting that they couldn't have moved sooner. So this is the second point. If they had moved the day we filed our complaint, what would have happened? We would have said, yes, we signed the arbitration agreement. This is not a situation like the case you just heard, where there's a different way to download it. Maybe he got it on his phone. Maybe he got it on the computer. And that is highly relevant to whether someone consented to arbitration. They make no argument that that's the case. Coinbase always requires a user to sign the arbitration clause. And there's no opt-out provision. So there was no discovery to do. So we would say they knew exactly what they needed to know to file. And the motion would have gotten litigated much the same way it did in Young v. Solano, which is, the court would have looked at, would have seen we signed it, would have looked at the delegation provision, said this doesn't delegate, and then addressed the equitable estoppel issue exactly the same. My friend on the other side is suggesting, like, they would have been sanctioned if they moved. There's not much more they could have known. They don't know today whether we were intoxicated when we signed the arbitration clause. But you don't need to know that before you know. You have knowledge of the right. You have an obligation to pursue it. And at the very least, you have obligations to seek that discovery sooner. So if we got past this waiver issue, how about on the next issue, on the arbitrability, do you see any disagreement among the circuits where the law currently stands on this? So I really don't, Judge Brest. I think I understand why you're asking that. So, for instance, defendants rely heavily on Blandin. But Judge LaPorte was careful to note, in footnote 1 of that opinion, he says, the plaintiff here has waived any challenge to the delegation question, so we're doing the writ large equitable estoppel analysis here. It would be, he says, it would be a different question if they had raised this properly. So then he goes on to do the more traditional, strong presumption in favor of arbitrability analysis. Yes, he's talking about the delegation clause, but in footnote 1, he says, I'm not deciding whether the, you know, first option of the Chicago standard is applying. All of the other cases that defendants rely on involve either third-party beneficiaries, where the language in the arbitration agreement, unlike here, is very clear. It's expressed that this agreement is going to bind people other than the parties, or they involve successors in interest or assignees. So, no, I don't think that in affirming Kramer, which is really all you need to do, if you reach the delegation clause, would create any kind of, any kind of circuit split on the delegation clause. How about the incorporation of some of these rules, right, AAA or JAMS? I think here's AAA. I think it's really not relevant, because the question is, who agreed to be bound by the AAA rules? We did not agree anything with defendants. And as Judge O'Scanlan noted, he was sitting by designation in the Eleventh Circuit, but as he noted in the Levine case, the whole premise of equitable estoppel is you don't have an agreement. We have not made any agreement with these plaintiffs, I'm sorry, with these defendants. And so you don't get the benefit of whatever the terms of the agreement say. You apply the equitable factors if you get there. Similarly, in the Young v. Byte Dance case, Judge Chabria, relying on Judge O'Scanlan's decision, said, I don't even see how it's possible. I can't think of a situation in which an agreement enforced by equitable estoppel would meet the standard of a clear and unmistakable intent to delegate. So there's a little bit of a gap when it comes to third-party beneficiaries. There's a question there, if the agreement's very clear that it's intending to provide benefits to third parties, then perhaps the delegation clause could be enforced by a non-signatory. But whereas here, the agreement is very clear, you and Coinbase agree, and I just want to be very clear, in their briefs, they suggest that the only time the agreement says you and Coinbase is in the preface, and then everything else speaks in these broad, universal terms, if you look at the definition of dispute, which they hinge their entire delegation argument on, it says you and Coinbase agree to litigate these disputes. And I would urge you to look not just at Judge O'Rourke's quoting of that language on ER-4, but the actual agreement on ER-81. You and Coinbase is all over that page. This is very clearly a bilateral agreement. And so if it's going to be enforceable at all by these defendants, it would be through equitable estoppel. And I think for the reasons Judge O'Rourke laid out, this is just not the case to do that. In terms of waiver, I just want to be clear that the knowledge finding that Judge O'Rourke made certainly was made in light of, as it always is by a district court in these circumstances, the litigation conduct of these defendants. Now, my friend on the other side suggests we did this as soon as we could. Number one, no, they could have done this before the motion to dismiss, and there's no problem with that. 9 U.S.C. 4 gives them exactly that right, particularly when you have as clear evidence of here as you do here that this arbitration agreement does not have an opt-out. It was obviously signed by anybody who purchased. But they moved to dismiss the complaint. They sought reconsideration of that. And then when the discussion, when their motion to dismiss was denied, they issued a large swath of discovery requests on us and an answer that does not mention arbitration and alleges counterclaims against us, and asked for a jury trial. And then eight months later, after their first swath of discovery requests, then they issue their RFAs and say, oh, we have no idea we need this discovery. Judge O'Rourke looked at all this, and he made a factual finding they knew, and he held they should have acted sooner under this Court's precedence. And you don't need to reach the delegation question in light of the record here. How about the actual equitable stop? We haven't heard a lot about that today. So I think I agree with the counsel that came before me that the Ford Motors case, if you're going to reach the substantive questions, general equitable estoppel, I think the Ford Motor case basically aligned the California Supreme Court with Kramer, which is either it applies only if you're seeking to enforce the agreement, or the defendants have colluded with the other signatory, the non-present signatory, and the plaintiff is seeking relief that turns inherently on the agreement. Here, the agreement is just simply not at all a part of our claims. We allege, yes, it's true that our plaintiffs bought their comp tokens on Coinbase, but we make clear that that was just a matter of happenstance. Paragraph 83 of the complaint notes that these are listed, all kinds of exchanges. If our plaintiffs had bought the same securities from a friend, just in a peer-to-peer transaction, our claim against defendants would not look any different. And so, we couldn't even allege the same Securities Act claim that we allege against the defendants against Coinbase. It's totally differently situated. It's not a partner in the endeavor. We have no idea whether they hold any comp. That's just not a part of our case. And so, this case is very, very far removed. The only relevance of the agreement to this case is this arbitration question. If you deleted Coinbase from our complaint, it would not change our securities claims one whit, and I think that's more than enough to satisfy Kramer and the California Supreme Court's recent decision in Ford Motors. If Your Honors don't have any more questions. Thank you. All right. Thank you, Counsel. Thank you, Your Honor. I think it's pretty clear from that that the waiver question here just comes down to the early discovery rule because it's very clear we could not have gone forward with the evidence that we had. We would have lost. They say they would have just admitted it, but we didn't know they would admit it. I don't think you could reasonably counsel a client to go ahead on the basis of not even knowing what the arbitration agreement is and say, well, we don't even know what the arbitration agreement is, but please enforce it. I mean, I think that's not plausible. So, the question is this, really, whether there's an early discovery rule. And that means, does failure to take early discovery and acquire knowledge of something that you don't have, is that the same thing as having knowledge? That's, I think, a very broad inquiry notice type, constructive knowledge type assessment that no court has ever done with respect to the waiver analysis. And I understand that this, the 20 months sort of looks bad in this context, but that's just a consequence of the unusual situation that we have in this case, which is that we're a non-signatory. So, if you knew about, that there was an arbitration clause and you didn't raise it in your answer, what are we supposed to make of that? We did not know at that point. We only know at the point. You knew that there was one. Our answer is supposed to be something that contains valid defenses. And so, a situation where we still have no idea, we have a suspicion. We have a plan, which is, at the first available opportunity that the federal rules provide, aside from unusual circumstances like Rule 26D or the PSR, we have to go to court and say, please, let's do something irregular and get discovery in a regular time. The first opportunity is when you serve your ordinary discovery. In our first tranche of RFAs, we requested this information. That was a sensible course if you don't think there's an early discovery rule. If you think there's an early discovery rule, gosh, absolutely, we should have been flagging it from day one, but that's the benefit of hindsight. We didn't realize there'd be an early discovery rule. What we thought was, we don't know, we have a suspicion. Can we go to court on this now? No, we'll lose, just like they lost in Salana. What should we do? Let's wait until we have the chance to figure this out through an RFA. The fact that it took a long time is not like the cases where someone is trying to get two bites of the apple or try to game the system. It's just a consequence of being a third party in this very unusual situation and having a PSLRSA in Congress saying, we don't really want discovery until after all this motion to dismiss stuff is hashed out, and then your first real opportunity or normal opportunity is through RFAs, and we did it at that first opportunity. It's an unusual case with a very narrow scope. Thank you for your argument, counsel. Thank you to both sides. The matter is submitted.
judges: THOMAS, NGUYEN, BRESS